AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by*<br>*name and address)*<br>Information Associated With<br>Fookyooman666@gmail[.]com That Is Stored At<br>Premises Controlled By Google LLC | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-SW-185(DJS)<br><br>USAO No. 2026R00408 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2250(a) | Failure to Register |

The application is based on these facts:

Please see attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Deputy U.S. Marshal John J. Akshar
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Video Conference *(specify reliable electronic means)*.

Date:    July 10, 2026

_____
*Judge's signature*

City and state:    Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT FOOKYOOMAN666 @GMAIL[.]COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 1:26-SW-185(DJS)  **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John J. Akshar, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account, Fookyooman666@gmail[.]com (the "Target Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Deputy United States Marshal with the United States Marshals Service (USMS). I have been employed as a Deputy United States Marshal since July 2019. Over the course of my career, I have been involved in hundreds of fugitive investigations with the New York/New Jersey Regional Fugitive Taskforce and have received over 1,000 hours of investigative

training. My training and experience also includes criminal investigations into violations of the Sex Offender Registration and Notification Act (SORNA), including failure to register under 18 U.S.C. § 2250(a).

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience as well as the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2250(a) (failure to register) have been committed by Joseph Nash. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      As set forth in more detail below, the USMS is investigating violations of 18 U.S.C. § 2250(a) (failure to register) by Joseph Nash in connection with his use of the Target Account in approximately January 2026 through May 29, 2026.

### Nash's 2009 Conviction for Distribution of Child Pornography

7.      On December 16, 2009, pursuant to a plea agreement, Nash pled guilty in the U.S. District Court for the Northern District of New York to a one-count information charging

2

distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B).  2009 Dkt. ## 9-13.[1]

8.    The plea agreement that Nash signed contains the following advisement:

Required Registration for Sex Offenders: The Defendant, as a result of his conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the Defendant resides, where the [sic] he is an employee, and where the he is a student. For initial registration purposes, the Defendant must also register in New York as a result of this conviction, even if he resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment.

2009 Dkt. # 13 ¶ 2(vii).

9.    In a separate part of his plea agreement, Nash "agree[d] that the statements made by him in signing this Agreement . . . shall be admissible and useable against him by the United States in any subsequent criminal or civil proceeding . . . ." Id. ¶ 6.

10.    Finally, in another part of his plea agreement, Nash "acknowledge[d] that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions." Id. ¶ 14.

11.    On November 24, 2010, Nash was sentenced by the Honorable Gary L. Sharpe to, inter alia, 120 months' imprisonment and a lifetime term of supervised release.  2009 Dkt. ## 49, 52. As set forth in the judgement for this sentence, Special Condition 4 of the conditions of Nash's supervised release provided "[t]he defendant shall register with the state sex offender registry

---

[1] All citations to "2009 Dkt." are to the ECF docket in the proceeding styled United States v. Joseph Nash, No. 1:09-cr-663 (N.D.N.Y.).  All citations to "2024 Dkt." are to the ECF docket in the proceeding styled United States v. Joseph Nash, No. 1:24-cr-256 (N.D.N.Y.).

agency in any state where the defendant resides, is employed, carries on a vocation or is a student." 2009 Dkt. # 52.[2]

12.     Since Nash's initial release from prison, his supervision has been revoked six times for various violations of the terms of his supervised release.

13.     On November 5, 2024, Nash pled guilty to failure to register under SORNA, in violation of 18 U.S.C. § 2250(a). 2024 Dkt. # 15. In his plea agreement in that case, Nash admitted that he was required to register under SORNA but failed to disclose to New York State authorities both a Gmail account and a Facebook account when registering in September 2023. *Id.* ¶ 5.

14.     Following that guilty plea, the Honorable Mae A. D'Agostino sentenced Nash in June 2025 to, *inter alia*, 21 months' imprisonment and 5 years of supervised release. Mandatory Condition 5 of Nash's supervised release requires Nash to comply with SORNA. 2024 Dkt. # 32.

### Nash's Use of the Target Account

15.     Nash began his seventh term of supervision on January 16, 2026. As shown on the below form, on January 27, 2026, Nash had completed a Probation Form 2, more commonly referred to as the United States Probation and Pretrial Services Notice and Acknowledgement of Duty to Comply with the Sex Offender Registration and Notification Act:

---

[2] An earlier portion of this judgment does not check a box for a similar condition.

4





16.    According to a Probation Form 12C dated May 28, 2026, more commonly referred to as a Petition for Warrant or Summons for Person Under Supervision, the U.S. Probation Office for the Northern District of New York learned that Nash was utilizing an unauthorized internet capable device. Based on this information, members of the U.S. Probation Office conducted an unannounced home visit at Nash's residence and confronted Nash about the unauthorized device. After being confronted about the unauthorized internet capable device, Nash admitted he had possessed the cellphone for at least "six weeks," and he was the owner of the Gmail account synced with the phone, "fookyooman666@gmail[.]com." Nash subsequently provided the passcode for the cellphone and admitted to a probation officer that he had not registered the Gmail account with the New York State Sex Offender Registry, as required by law.

*Nash's Failure to Register the Target Account*

17.     According to records that I have obtained from the New York State Department of Criminal Justice Services, Nash submitted a sex offender change of address form on February 11, 2026. As shown below, Nash reported an email account on this form, but failed to list the Target Account:



18.     On May 29, 2026, Nash was arrested pursuant to a Supervised Release Violation arrest warrant issued out of the U.S. District Court for the Northern District of New York. One off the allegations in the petition supporting the U.S. Probation Office's request for that arrest warrant was that Nash had violated SORNA by using but not registering the Target Account.

## BACKGROUND CONCERNING GOOGLE[3]

19.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

20.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

21.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

22.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records

---

[3] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

7

indicating ownership and usage of the Google account across services, described further after the description of services below.

23.    Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

24.    When individuals register with Google for a Google account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

25.    Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log

files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

26.    Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

27.    Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records

9

indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months

28.    In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In this investigation, the use of the Target Account is the crime under investigation and therefore, any files or information tending to show who the user of the Target Account is or was is relevant to the investigation. Indeed, evidence supporting Nash's 2024 SORNA conviction was seized pursuant to a search warrant for the unregistered Google account that Nash was using at the time of the events giving rise to that case.

29.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify

10

which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

30.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

31.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

32.     Based on the foregoing, I request that the Court issue the proposed search warrant.

33.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

11

Attested to by the affiant:

_____
John J. Akshar
Deputy United States Marshal
United States Marshals Service

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by Teams on July 10, 2026 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Daniel J. Stewart
United States Magistrate Judge

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with fookyooman666@gmail[.]com ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

2

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on July 6, 2026, with the Google Reference Number 142553527, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from account creation to May 28, 2026, unless otherwise indicated:

   a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

   1.    Names (including subscriber names, user names, and screen names);

   2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

   4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

   6.    Length of service (including start date and creation IP) and types of service utilized;

   7.    Means and source of payment (including any credit card or bank account number); and

8.      Change history.

b.      All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.      Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d.      All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

*Google is hereby ordered to disclose the above information to the government within 7 days of issuance of this warrant.*

2

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2250(a) (failure to register) involving Joseph Nash and occurring after January 27, 2026, including, for the account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account's owner;

b.    Evidence indicating the account owner's state of mind as it relates to the crimes under investigation; and

c.    The identity of the person(s) who created and/or used the account.

3